IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

YAN YAN,                          :    CIVIL ACTION
                                  :    NO. 12-3858
          Plaintiff,             :
                                  :
                                  :
     v.                           :
                                  :
FOX CHASE CANCER CENTER, et al.,  :
                                  :
          Defendants.            :


M E M O R A N D U M

EDUARDO C. ROBRENO, J.                    September 18, 2014


        Plaintiff Yan Yan ("Plaintiff") brings this pro se
employment discrimination action against Defendants Fox Chase
Cancer Center ("FCCC") and Dr. Hua-Ying Fan (collectively,
"Defendants"). Plaintiff alleges that she was subjected to a
hostile work environment and that her employment with FCCC was
terminated on the basis of her sex, national origin, and race,
in violation of Title VII of the Civil Rights Act of 1964
("Title VII"), 42 U.S.C. § 2000e, and the Pennsylvania Human
Relations Act ("PHRA"), 43 Pa. Cons. Stat. § 951. Defendants
have moved for summary judgment and, for the reasons that
follow, the Court will grant the motion in its entirety.

## I.    BACKGROUND

Plaintiff is an individual who worked as a scientific technician in an FCCC research laboratory during the summer of 2010. Defs.' Mem. Supp. Mot. Summ. J. 3, ECF No. 103-3; Compl. ¶¶ 15, 19, ECF No. 3. At that time, Defendant Dr. Hua-Ying Fan worked as a principal investigator for FCCC and ran the laboratory in which Plaintiff worked. Defs.' Mot. Summ. J. Ex. B, Fan Decl. ¶ 2; Compl. ¶ 8, 16. Dr. Fan hired Plaintiff on June 1, 2010, and then terminated her employment approximately ten weeks later, on August 16, 2010. Fan Decl. Ex. 2, Formal Offer Letter, & Ex. 8, Termination Letter. Plaintiff's "Notice of Termination" letter states that the reason for the termination was that Plaintiff had failed to improve her work performance after having received a thirty-day evaluation that indicated improvement was needed. See Termination Letter. As discussed in more depth below, Plaintiff contends that the proffered explanation is a mere pretext for unlawful discrimination on the basis of sex, race, and national origin. She also argues that she was generally harassed and subjected to disparate treatment on the basis of those characteristics.

After filing complaints with the Equal Employment Opportunity Commission ("EEOC") and the Pennsylvania Human Relations Commission ("PHRC") and receiving a right-to-sue

letter, Plaintiff initiated the instant action by filing an application to proceed in forma pauperis on July 10, 2012. ECF No. 1. The application was granted, and Plaintiff then filed a complaint bringing discrimination claims under Title VII, the PHRA, 42 U.S.C. § 1983, and the Equal Pay Act of 1963 ("Equal Pay Act"), 29 U.S.C. § 206. Upon Defendants' motion (ECF No. 13) and the recommendation of Magistrate Judge Thomas J. Rueter (ECF No. 20), the Court subsequently dismissed the claims under § 1983 because Defendants are not state actors for purposes of that statute. ECF No. 22. The parties then proceeded to discovery on the following remaining claims in the complaint: (1) sex discrimination under Title VII (Count I); (2) race/national origin discrimination under Title VII (Count II); (3) sex discrimination under the PHRA (Count III); (4) race/national origin discrimination under the PHRA (Count IV); and (5) violation of the Equal Pay Act (Count VII).

Approximately six weeks before the close of discovery, Plaintiff filed a motion to stay the case due to certain health problems that she asserted made her unable to pursue litigation. ECF No. 33. The Court granted the motion on March 5, 2013. ECF No. 34. Six months later, Defendants moved to lift the stay, noting that Plaintiff was actively pursuing litigation in another case before the Third Circuit. ECF No. 35. The Court denied the motion, allowing the matter to remain stayed for

3

another ninety days, but the Court indicated that any further extension of the stay would require that Plaintiff present evidence from a physician regarding her condition. ECF No. 41.

Shortly thereafter, Defendants filed an emergency motion for sanctions, asserting that Plaintiff had published confidential documents on a public website in flagrant violation of the protective order governing the litigation. ECF No. 44. After a hearing on the motion, the Court ordered Plaintiff to remove the documents from the website, to refrain from any further dissemination of confidential documents, and not to communicate directly with any employees or former employees of FCCC. ECF No. 48. Further, in light of Plaintiff's demonstrated ability to participate in the litigation, the Court scheduled a hearing to consider whether the stay should be lifted. ECF No. 49. Before that hearing could take place, however, Defendants filed another motion for sanctions, this time contending that Plaintiff had violated the Court's previous order by calling and emailing an FCCC employee and by failing to remove some of the confidential documents from the website. ECF No. 54. The Court ordered Plaintiff to show cause why her case should not be dismissed as a sanction, and then held a hearing on December 16, 2013. ECF No. 56. Following the hearing, the Court denied the motion for sanctions and gave Plaintiff thirty days to provide "convincing proof" as to why the case should remain stayed. ECF

4

Nos. 64 & 68. Plaintiff failed to do so, and the stay was lifted on February 11, 2014. ECF No. 70.

The stay having been lifted, discovery in the case resumed, and – after several schedule changes to accommodate Plaintiff's calendar – Plaintiff's deposition was scheduled for March 19, 2014. As that date grew closer, Plaintiff moved for an extension of the discovery deadline (ECF No. 76), which the Court denied for failure to show good cause for delay (ECF No. 80). When Plaintiff again requested that Defendants reschedule her deposition, Defendants filed a motion to compel Plaintiff's appearance, which the Court granted. ECF Nos. 77 & 84. The Court emphasized in its order that "[f]ailure to appear at the scheduled deposition may result in the dismissal of Plaintiff's case." ECF No. 84. Nonetheless, Plaintiff failed to appear at her deposition as ordered. Defs.' Mot. Summ. J. Ex. G, Hr'g Tr., Mar. 19, 2014.

Discovery in the case closed on March 20, 2014, and Defendants subsequently filed a motion for summary judgment and a motion to dismiss as a sanction. ECF No. 103. Plaintiff responded (ECF No. 105), and both parties moved to file reply briefs (ECF Nos. 110, 113). The matter is now ripe for disposition.

## II.  MOTION FOR SANCTION OF DISMISSAL

Defendants contend that Plaintiff's case should be dismissed with prejudice as a sanction for Plaintiff's repeated violation of the Court's orders. Specifically, they note that Plaintiff violated the Court's protective order by publicizing private documents; that she called and emailed FCCC employees in direct violation of the Court's order that she not contact FCCC employees; that she failed to comply with the Court's order that she remove certain documents from a public website; and that she failed to appear for her Court-ordered deposition. They also describe various "dilatory and abusive actions" Plaintiff has taken during the course of the litigation, such as sending emails to Defendants calling them "liers [sic], hookers, and cheaters." Defs.' Mem. Supp. Mot. Summ. J. 23.

Federal Rule of Civil Procedure 41(b) permits the court to dismiss an action with prejudice "[i]f the plaintiff fails to prosecute or to comply with [the federal] rules or a court order." In determining whether "the extreme sanction of dismissal" is warranted, courts must consider the factors articulated by the Third Circuit in Poulis v. State Farm Fire & Casualty Co., 747 F.2d 863 (3d Cir. 1984). See McLaughlin v. Phelan Hallinan & Schmieg, LLP, 756 F.3d 240, 249 n.14 (3d Cir. 2014). Those factors are: "(1) the extent of the party's

6

personal responsibility; (2) the prejudice to the adversary caused by the failure to meet scheduling orders and respond to discovery; (3) a history of dilatoriness; (4) whether the conduct of the party or the attorney was willful or in bad faith; (5) the effectiveness of sanctions other than dismissal, which entails an analysis of alternative sanctions; and (6) the meritoriousness of the claim or defense." Briscoe v. Klaus, 538 F.3d 252, 258 (3d Cir. 2008) (quoting Poulis, 747 F.2d at 868) (emphasis omitted).

The Court agrees that many of the Poulis factors point in favor of dismissal of this case. Because Plaintiff is proceeding pro se, she is solely responsible for her failures to comply with court orders. See Briscoe, 538 F.3d at 258-59 ("[I]t is logical to hold a pro se plaintiff personally responsible for delays in his case because a pro se plaintiff is solely responsible for the progress of his case, whereas a plaintiff represented by counsel relies, at least in part, on his or her attorney."). As for the second factor, Plaintiff's failure to appear for her deposition has caused prejudice to Defendants by "frustrat[ing] the progress of discovery" and impeding Defendants' "ability to prepare a defense." See Stezzi v. Citizens Bank of PA, 542 F. App'x 124, 126 (3d Cir. 2013) (not precedential) (citing Ware v. Rodale Press, Inc., 322 F.3d 218, 222 (3d Cir. 2003)). Plaintiff also has a history of

7

dilatoriness, as she has demonstrated a tendency to delay the litigation unnecessarily and a general disregard for the Court's orders. See Adams v. Trustees of N.J. Brewery Employees' Pension Trust Fund, 29 F.3d 863, 874 (3d Cir. 1994) ("Extensive or repeated delay or delinquency constitutes a history of dilatoriness, such as consistent non-response to interrogatories, or consistent tardiness in complying with court orders."). Plaintiff's repeated violations also suggest that her conduct may have been willful.

Although dismissal under the facts of this case is therefore warranted, the Court declines to impose the "extreme" sanction of dismissal per se, and instead will sanction Plaintiff by striking from the record her answers to Defendants' first set of interrogatories. See Defs.' Mot. Summ. J. Ex. D, Pl.'s Interrogatory Answers. In her answers to Defendants' interrogatories, Plaintiff makes numerous factual assertions, including allegations of several discriminatory comments made by her employer, Dr. Fan. Id. Because Plaintiff failed to appear for her deposition, in direct violation of the Court's order, Defendants were unable to question Plaintiff regarding those statements. In effect, Plaintiff has prevented Defendants from challenging her assertions and from probing more deeply into the circumstances surrounding the alleged comments. Discovery is a two-way street. A party may not use it as a sword, raising

issues of fact in her answers to interrogatories which would preclude summary judgment, and then refusing, without cause, to subject herself to a deposition.

In light of that prejudice to Defendants' ability to prepare a defense, the appropriate sanction is to strike Plaintiff's answers to the interrogatories. Such a sanction is provided for under Federal Rule of Civil Procedure 37(b)(2), which permits the court to impose a "just" sanction for failures to comply with court-ordered discovery, including striking pleadings or prohibiting the disobedient party from "introducing designated matters into evidence." By striking Plaintiff's interrogatory answers from the record, the Court prevents Plaintiff from attempting to avoid summary judgment by relying on otherwise-unsupported assertions of discriminatory conduct while refusing to submit to a deposition. Such a sanction therefore effectively minimizes any prejudice to Defendants and will deter Plaintiff from future disobedience. Accordingly, under Poulis, the less extreme sanction of striking Plaintiff's interrogatory answers is appropriate in this instance.

III. **MOTION FOR SUMMARY JUDGMENT**

    A.   <u>Legal Standard</u>

       Summary judgment is appropriate if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "A motion for summary judgment will not be defeated by 'the mere existence' of some disputed facts, but will be denied when there is a genuine issue of material fact." <u>Am. Eagle Outfitters v. Lyle & Scott Ltd.</u>, 584 F.3d 575, 581 (3d Cir. 2009) (quoting <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247-48 (1986)). A fact is "material" if proof of its existence or nonexistence might affect the outcome of the litigation, and a dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." <u>Anderson</u>, 477 U.S. at 248.

       The Court will view the facts in the light most favorable to the nonmoving party. "After making all reasonable inferences in the nonmoving party's favor, there is a genuine issue of material fact if a reasonable jury could find for the nonmoving party." <u>Pignataro v. Port Auth.</u>, 593 F.3d 265, 268 (3d Cir. 2010). While the moving party bears the initial burden of showing the absence of a genuine issue of material fact, meeting this obligation shifts the burden to the nonmoving party who

must "set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 250.

B.   Material Facts of Record[1]

In March 2010, Plaintiff, who has a masters' degree in genetics from Pennsylvania State University, applied to work as a scientific technician in Dr. Hua-Ying Fan's lab at FCCC. See Pl.'s Mot. Dismiss Defs.' Mot. Summ. J. Exs. 5, Offer Email, & 13, Visa Support Letter. Dr. Fan interviewed Plaintiff and decided to hire her for the position, knowing at the time that Plaintiff was an Asian woman of Chinese citizenship.[2] Fan Decl. ¶ 4. On April 14, 2010, Dr. Fan emailed Plaintiff to offer her a position as a "Scientific Technician II." See Offer Email. The

---

[1]     In light of the Court's decision to sanction Plaintiff, the Court will not consider Plaintiff's answers to Defendants' interrogatories in this statement of material facts, nor will it consider factual assertions made in Plaintiff's briefs and pleadings that are unsupported by record evidence. See Jones v. United Parcel Serv., 214 F.3d 402, 407 (3d Cir. 2000) ("At summary judgment, a plaintiff cannot rely on unsupported allegations, but must go beyond pleadings and provide some evidence that would show that there exists a genuine issue for trial."); Jersey Cent. Power & Light Co. v. Twp. of Lacey, 772 F.2d 1103, 1109-10 (3d Cir. 1985) ("Legal memoranda and oral argument are not evidence and cannot by themselves create a factual dispute sufficient to defeat a summary judgment motion.").

[2]     As Defendants note, Dr. Fan is also an Asian woman of Chinese descent. See Defs.' Mem. Supp. Mot. Summ. J. 1. Plaintiff emphasizes in response that Dr. Fan was born in Taiwan and has obtained her U.S. citizenship, whereas Plaintiff is from mainland China and is a Chinese citizen. Pl.'s Mot. Dismiss Defs.' Mot. Summ. J. 3.

email stated: "If you accept this offer, you will receive a formal offer letter from Fox Chase, and our human resource department will contact you directly to proceed with your visa." Id. To facilitate Plaintiff's visa application, Dr. Fan wrote Plaintiff a strong support letter. See Visa Support Letter.

After she offered the job to Plaintiff, Dr. Fan was informed by the human resources department that Plaintiff's minimal work experience made her better suited for the position of "Scientific Technician I," with advancement opportunities. Fan Decl. ¶ 5. Dr. Fan agreed, and Plaintiff's formal offer letter from FCCC offered Plaintiff the position of Scientific Technician I, with an annual salary of $32,500. See Formal Offer Letter. Plaintiff accepted the offer. Id.

Prior to hiring Plaintiff, Dr. Fan had one previous lab technician, an Asian man of Indian origin named Girish Hemashettar. Fan Decl. ¶¶ 5, 8; Defs.' Mem. Supp. Mot. Summ. J. Ex. A, Lab Employees List. Mr. Hemashettar had experience working in the pharmaceutical industry, and he was hired as a Scientific Technician II with a salary of $34,000. Fan Decl. ¶¶ 8, 12. As a Scientific Technician II, Mr. Hemashettar performed different job duties than those duties Plaintiff was hired to perform. Id. ¶¶ 9-11. For instance, Plaintiff's duties "primarily involved ordering all necessary supplies and materials for the laboratory, creating and making general

12

solutions and reagents for use in the laboratory's experiments, photographing and analyzing relevant samples, assisting in experiments, and conducting basic data analysis," whereas Mr. Hemashettar performed more advanced functions and "acted as a true lab manager." Id. ¶ 11. Although Plaintiff's salary was $1,500 lower than Mr. Hemashettar's had been, Plaintiff's salary as a Scientific Technician I was higher than any of the male FCCC employees hired into that position in 2009 and 2010. Defs.' Mem. Supp. Mot. Summ. J. Ex. C, Salary Data Chart. In Plaintiff's opinion, her background is "better" than Mr. Hemashettar's. Pl.'s Mot. Dismiss Defs.' Mot. Summ. J. 2.

Plaintiff began working in Dr. Fan's lab on June 1, 2010. Compl. ¶¶ 15, 19. Dr. Fan regularly met with Plaintiff to discuss her work tasks and accomplishments, as Dr. Fan had done with her previous technician, Mr. Hemashettar. Fan Decl. ¶ 14. Dr. Fan found, however, that Plaintiff required "significantly more direction and oversight" than her predecessor. Id. On June 30, 2010, Dr. Fan conducted a thirty-day performance evaluation of Plaintiff, which she discussed with Plaintiff. Pl.'s Mot. Dismiss Defs.' Mot. Summ. J. Ex. 16, 30-Day Evaluation. The evaluation indicated several different areas in which Plaintiff needed to improve. Id. In particular, it noted that Plaintiff needed to be more detailed and accurate with her lab notes; that she needed to be more punctual for meetings; that she needed to

13

finish her daily assignments or discuss them with a supervisor before leaving for the day; that her efficiency and accuracy could be improved; and that she needed to clean up her work space before going home. Id.

On July 7, 2010, FCCC notified all of the employees of Dr. Fan's lab, including Plaintiff, that the lab was closing effective August 31, 2010, and that as a result their positions would be terminated on that date. Fan Decl. Ex. 6, Lab Closure Letter. The closure was due to Dr. Fan's decision to accept a new position with the University of Pennsylvania. Fan Decl. ¶ 16. Plaintiff responded by inquiring as to whether she could accompany Dr. Fan to her new lab. Pl.'s Mot. Dismiss Defs.' Mot. Summ. J. Ex. 44. Dr. Fan informed her that a position could not be guaranteed, and she encouraged Plaintiff to "explore other options." Id. Plaintiff proceeded to apply for other jobs at FCCC and at the University of Pennsylvania. Id.

Meanwhile, Plaintiff's work in Dr. Fan's lab continued, and Dr. Fan continued to notice problems in Plaintiff's work performance. In particular, Plaintiff approved payment for supplies that were never received by the lab, and she mislabeled experiment samples. Fan Decl. ¶ 17 & Ex. 7. Plaintiff does not dispute that she made "daily minor errors," but she asserts that "[e]veryone in the lab made mistakes daily," some of which she says were more severe than her mistakes. Pl.'s Mot. Dismiss

14

Defs.' Mot. Summ. J. 5. In particular, she describes several

researchers' failed experiments. Id.

On August 16, 2010, two weeks before Plaintiff would have

otherwise been terminated due to the closure of the lab, Dr. Fan

terminated Plaintiff's employment. She provided Plaintiff with a

"Notice of Termination" letter, which included the following

explanation for the decision:

> You were given a 30 day evaluation on June
> 30, 2010 in which it was stated that
> improvement in performance areas need to be
> shown; since that time, this has not
> occurred. One of the areas of concern is
> still your inability to carry out daily
> assignments accurately and efficiently. For
> example, you mislabeled the western blots,
> which could lead to the use of the wrong
> antibody and lead to wrong conclusions if we
> did not realize the results did not make
> sense. Another example, you did not remember
> what supplies were ordered and received; you
> almost approved to pay Bio-Rad for the gel
> loading tips we did not receive, if we did
> not find out the mistake.

Termination Letter. Although Plaintiff's termination was

effective immediately, the Notice indicated that she would be

paid through August 31, 2010, like all other lab employees. Id.;

see also Fan Decl. ¶¶ 18-19.

During Plaintiff's employment with FCCC, Dr. Fan employed

four other people in her lab: Sergey Karakashev, a male graduate

student from Russia; Dr. Robert Lake, a Caucasian male staff

scientist from the United States; Dr. Asjad Basheer, an Asian

male post-doctoral associate from India; and Dr. Kunjlata Amin, an Asian female lab volunteer from India. See Lab Employees List. None of those individuals held the position of Scientific Technician I or II, and their job responsibilities differed from Plaintiff's. Id. On several occasions, Dr. Fan asked Plaintiff to assist Dr. Basheer and Mr. Karakashev on some of their projects. See Pl.'s Mot. Dismiss Defs.' Mot. Summ. J. Exs. 30 & 31.

C.   Discussion

Defendants have moved for summary judgment on all of the remaining claims in Plaintiff's complaint, namely, her claims of sex, race, and national origin discrimination under Title VII and the PHRA; her hostile work environment claims; and her claim under the Equal Pay Act.[3] Put simply, Defendants assert that Plaintiff has produced insufficient evidence for a reasonable juror to find in her favor on any of her claims. Plaintiff disagrees, arguing that there are genuine issues of material

---

[3]        To the extent that Plaintiff makes arguments regarding breach of contract claims and claims relating to misuse of her computer password, the Court declines to consider those arguments, as they do not relate to the claims in her complaint.

fact that must be resolved by a jury.[4] The Court considers each
of Plaintiff's claims in turn.

###### 1.    Employment Discrimination

Plaintiff's primary contention is that, in terminating
her employment, Defendants discriminated against her on the
basis of her sex, race, and national origin.[5] She asserts that
throughout the course of her ten-week employment she was
routinely treated differently than her co-workers, and that
those differences in treatment reveal the gender- and race-based
animus that she says prompted her termination. Defendants
contend that Plaintiff has failed to establish a prima facie
case of unlawful discrimination, and that her "subjective
assessment of her own work performance does not establish that
Fox Chase's legitimate, non-discriminatory reasons for her
termination were mere pretext." Defs.' Mem. Supp. Mot. Summ. J.
6.

---

[4]     Plaintiff also asserts that summary judgment should be
denied because more discovery is needed. That argument rehashes
Plaintiff's earlier assertions in support of her motion for an
extension of time to complete discovery and her motions to
compel, which the Court already denied. See ECF Nos. 76, 80, 87,
92, 93 & 97). The Court will decline to reconsider those
arguments here.

[5]     Although Plaintiff at times also suggests that she was
discriminated against on the basis of age and disability, she
did not assert any such claims in her complaint.

Under Title VII, it is an unlawful employment practice for an employer to "discharge any individual . . . because of such individual's race, color, religion, sex, or national origin."[6] 42 U.S.C. § 2000e-2(a)(1). When, as here, there is no direct evidence of an employer's intent to discriminate on the basis of those protected characteristics, a plaintiff can establish that an action was discriminatory using circumstantial evidence under the familiar McDonnell Douglas framework.[7] See McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). First, the burden of production is on the plaintiff to establish a prima facie case of discrimination. Burton v. Teleflex Inc., 707

---

[6]    Pennsylvania courts interpret the PHRA in accord with Title VII. Gomez v. Allegheny Health Servs., Inc., 71 F.3d 1079, 1084 (3d Cir. 1995).

[7]    Plaintiff maintains that she has direct evidence of discrimination, but the only evidence she points to in that regard are alleged discriminatory comments by Dr. Fan that Plaintiff describes in her answers to Defendants' interrogatories. For the reasons discussed above regarding Defendants' motion to dismiss as a sanction, the Court will strike those answers from the record and not consider them in resolving the instant motion for summary judgment. Further, even if they were of record, none of the alleged comments were made in connection with Dr. Fan's decision to terminate Plaintiff's employment, and so they do not amount to direct evidence of discrimination. See Anderson v. Wachovia Mortg. Corp., 621 F.3d 261, 270 (3d Cir. 2010) (explaining that "direct evidence must satisfy two requirements": (1) "the evidence must be strong enough to permit the factfinder to infer that a discriminatory attitude was more likely than not a motivating factor" in the decision; and (2) "the evidence must be connected to the decision being challenged by the plaintiff" (internal quotation marks omitted)).

F.3d 417, 426 (3d Cir. 2013). To establish a prima facie case of discrimination under Title VII, a plaintiff must show that (1) she is a member of a protected class; (2) she is qualified for the position; (3) she suffered an adverse employment action; and (4) the circumstances give rise to an inference of unlawful discrimination. Makky v. Chertoff, 541 F.3d 205, 214 (3d Cir. 2008).

If the plaintiff succeeds in making out a prima facie case, "then the burden of production shifts to the defendant to offer evidence of a legitimate, nondiscriminatory reason for the action." Anderson v. Wachovia Mortg. Corp., 621 F.3d 261, 271 (3d Cir. 2010) (internal quotation marks omitted). If the defendant states such a reason, the presumption of discrimination raised by the prima facie case is rebutted, and plaintiff must show by a preponderance of the evidence that the defendant's explanation is actually a pretext for discrimination. Id.; see also St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 507-08 (1993) (explaining that, if a defendant produces a nondiscriminatory reason for its action, plaintiff has an opportunity to show "that the proffered reason was not the true reason for the employment decision and that race was") (citation and internal quotation marks omitted). Throughout this burden-shifting process, "the ultimate burden of proving

intentional discrimination always rests with the plaintiff."
Anderson, 621 F.3d at 271.

Defendants contend that Plaintiff has not established a
prima facie case of employment discrimination because she has
not pointed to any circumstances that give rise to an inference
of unlawful discrimination. See Makky, 541 F.3d at 214. They say
that, although Plaintiff alleges that she was treated
differently than other lab members, those lab members were not
similarly situated to Plaintiff and thus are not appropriate
comparators. They further contend that any disparate treatment
between Plaintiff and the other lab members does not raise an
inference of discrimination because "Plaintiff's fellow lab
members were of various races and national origins, and of both
genders." Defs.' Mem. Supp. Mot. Summ. J. 11. Finally,
Defendants assert that any inference of unlawful discrimination
is undermined "by the undisputed fact that Dr. Fan made the
decision to both hire and fire Plaintiff within a ten-week
timeframe." Id. at 12. In response to those arguments, Plaintiff
asserts that she performed better than any of her colleagues,
yet she alone was terminated for what she considers to be minor
mistakes.

The Court agrees with Defendants that Plaintiff has not
met her burden of showing that her termination occurred under
circumstances that give rise to an inference of discrimination.

In order to satisfy that burden, a plaintiff must present evidence upon which a "court can infer that if the employer's actions remain unexplained, it is more likely than not that such actions were based on impermissible reasons." Equal Emp't Opportunity Comm'n v. Metal Serv. Co., 892 F.2d 341, 348 (3d Cir. 1990). One way that a plaintiff can make such a showing is by demonstrating that she was treated less favorably than a similarly situated employee outside of the protected class. Such disparate treatment raises an inference of unlawful discrimination, as "we know from our experience that more often than not people do not act in a totally arbitrary manner." Pivirotto v. Innovative Sys., Inc., 191 F.3d 344, 353 (3d Cir. 1999) (quoting Furnco Constr. Corp. v. Waters, 438 U.S. 567, 577 (1978)). Thus, when similarly situated employees are treated differently, a reasonable factfinder can presume that the employer "based his decision on an impermissible consideration such as race." Id.

Here, Plaintiff has shown that she was treated differently than her co-workers, as she was the only one terminated from her position. But she has failed to show that she is similarly situated to those co-workers, such that a reasonable factfinder could infer that the difference in treatment was based on an impermissible consideration. Plaintiff occupied a different position than any of her co-workers, as she

was the only scientific technician in the lab. She therefore could legitimately be held to a different standard of conduct than her co-workers, as her responsibilities differed from theirs. See Anderson, 297 F.3d at 250 (explaining that "the evidence failed to show that the [employees'] duties were comparable or that they were otherwise similarly situated"); Oakley v. Orthopaedic Assoc. of Allentown, Ltd., 742 F. Supp. 2d 601, 608 (E.D. Pa. 2010) ("Employees are similarly situated when they have similar responsibilities and are held to similar standards," or "when their conduct on the job – or misconduct – is similar in nature."). Furthermore, even if Plaintiff and her co-workers had performed similar functions, Plaintiff has failed to show that her co-workers had performance issues similar to hers. See Moussa v. Penn. Dep't of Public Welfare, 413 F. App'x 484, 486-87 (3d Cir. 2011) (not precedential) (concluding that employees who engaged in different types of workplace misconduct were not "similarly situated"). In particular, she has not pointed the Court to any evidence that another lab member failed to improve his or her performance after receiving a performance report indicating that improvement was needed. Absent such evidence, the fact that Plaintiff was the only lab employee who was fired does not support an inference of discrimination.

Moreover, even if Plaintiff could be said to have established a prima facie case of discrimination, she has not

shown that the legitimate, non-discriminatory reason proffered by Defendants for her termination is a mere pretext for unlawful discrimination. To establish pretext, a plaintiff must provide evidence "from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." Burton v. Teleflex Inc., 707 F.3d 417, 427 (3d Cir. 2013) (quoting Fuentes v. Perskie, 32 F.3d 759, 764 (3d Cir. 1994)). To meet that burden, a plaintiff "cannot simply show that the employer's decision was wrong or mistaken." Fuentes, 32 F.3d at 765; see also Brewer v. Quaker State Oil Ref. Corp., 72 F.3d 326, 332 (3d Cir. 1995) ("[A]n employer may have any reason or no reason for discharging an employee so long as it is not a discriminatory reason."). Evidence undermining an employer's proffered reason therefore must be sufficient to "support an inference that the employer did not act for its stated reasons." Sempier v. Johnson & Higgins, 45 F.3d 724, 731 (3d Cir. 1995). A plaintiff can satisfy that burden at the summary judgment stage by "demonstrat[ing] such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions" in the employer's explanation for its action "that a reasonable factfinder could rationally find them 'unworthy of credence.'" Burton, 707 F.3d at 427 (quoting Fuentes, 32 F.3d at 765).

Here, Defendants' asserted reason for Plaintiff's termination is that Plaintiff continued to demonstrate an inability to perform the basic functions of her job, even after having received a thirty-day performance evaluation directing her to make improvements. Plaintiff does not challenge the substance of that proffered reason, instead implicitly admitting that she made the "daily minor errors" described by Dr. Fan. See Pl.'s Mot. Dismiss Defs.' Mot. Summ. J. 5. Rather, Plaintiff attempts to rebut Defendants' proffered reason by asserting that the mistakes she made were insufficient to justify termination, and by suggesting that she "actually performed [the] advanced techniques and functions of [a] postdoc and staff scientist." Id. at 17.

Such assertions, even if true, do not establish pretext. As Defendants rightly note, the employee's own "view of his performance is not at issue; what matters is the perception of the decision maker." Billet v. CIGNA Corp., 940 F.2d 812, 825 (3d Cir. 1991). The fact that Plaintiff believes that she outperformed all of her colleagues therefore does nothing to undermine Defendants' assertion that she was fired for her undisputed performance problems. Furthermore, Dr. Fan need not have had a good reason for terminating Plaintiff, she just cannot have had a discriminatory reason for the decision. See Brewer, 72 F.3d at 332 ("[A]n employer may have any reason or no

reason for discharging an employee so long as it is not a discriminatory reason."). Even if a reasonable factfinder might agree that Plaintiff did not deserve to be terminated for her mistakes, an adverse employment action can be unfair without being discriminatory. Accordingly, as Plaintiff points to no evidence suggesting that Defendants' proffered reason for her termination is "unworthy of credence," she has not met her burden of demonstrating pretext. See Burton, 707 F.3d at 427.

At base, Plaintiff's complaint is that she alone among her co-workers suffered an adverse employment action, and she does not believe that action was warranted by her conduct. Although Plaintiff is understandably upset by her loss of employment, that does not give her a cause of action under Title VII or the PHRA. Employers are allowed to fire their at-will employees for any reason, other than a legally prohibited reason. To succeed on a claim of discrimination, a plaintiff must do more than simply show that she belongs to a protected class and suffered an adverse action – she must provide a basis for a jury to infer that the adverse action was the product of discriminatory animus. Plaintiff here has not done so, and thus Defendants are entitled to summary judgment on her claims of employment discrimination under Title VII and the PHRA.

2.    Hostile Work Environment

Plaintiff also contends that she was subjected to a hostile work environment on the basis of her sex and national origin. To succeed on such a claim, she must show that: (1) she suffered intentional discrimination because of a protected characteristic; (2) the discrimination was severe or pervasive; (3) it detrimentally affected her; (4) it would have detrimentally affected a reasonable person of the same protected class in her position; and (5) there is a basis for vicarious liability. Mandel v. M & Q Packaging Corp., 706 F.3d 157, 167 (3d Cir. 2013). When deciding whether those elements are established, courts must evaluate the record "as a whole," concentrating "not on individual incidents, but on the overall scenario." Cardenas v. Massey, 269 F.3d 251, 261 (3d Cir. 2001) (quoting Durham Life Ins. Co. v. Evans, 166 F.3d 139, 149 (3d Cir. 1999)). Relevant circumstances may include "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Mandel, 706 F.3d at 168 (quoting Harris, 510 U.S. at 23). Unless extremely serious, offhand comments and isolated incidents are insufficient to sustain a hostile work environment claim. Caver v. City of Trenton, 420

26

F.3d 243, 262 (3d Cir. 2005).

Here, the only evidence of discriminatorily harassing conduct that Plaintiff points to are the various discriminatory comments described within her answers to Defendants' interrogatories, which the Court will strike from the record as a sanction and declines to consider. Absent that evidence, there is no evidence whatsoever in the record to establish the first two elements of Plaintiff's prima facie case. Furthermore, even if Plaintiff's interrogatory answers were of record, they amount to uncorroborated, "self-serving allegations" that "are entitled to little weight, and are insufficient to raise a triable issue of fact." See Dyszel v. Marks, 6 F.3d 116, 129 (3d Cir. 1993). Accordingly, the Court will grant Defendants' motion for summary judgment on Plaintiff's hostile work environment claims, as Plaintiff has not pointed to record evidence upon which a reasonable juror could find in her favor.

3.    Equal Pay Act

Plaintiff's final claim is that Defendants violated the Equal Pay Act by paying her less than Dr. Fan's previous technician, Girish Hemashettar. Under the Equal Pay Act, an employer is barred from discriminating "on the basis of sex by paying wages to employees . . . at a rate less than the rate at which he pays wages to employees of the opposite sex in such

establishment for equal work on jobs the performance of which requires equal skill, effort, and responsibility," unless one of four affirmative defenses applies. 29 U.S.C. § 206(d). The four affirmative defenses are that the difference in pay is due to: (1) a seniority system; (2) a merit system; (3) a system which measures earnings by quantity or quality of production; or (4) "a differential based on any other factor other than sex." Id.

The Third Circuit analyzes claims under the Equal Pay Act using a two-step burden-shifting paradigm. Stanziale v. Jargowsky, 200 F.3d 101, 107 (3d Cir. 2000). First, the plaintiff must establish a prima facie case "by demonstrating that employees of the opposite sex were paid differently for performing 'equal work' – work of substantially equal skill, effort and responsibility, under similar working conditions." Id. If the plaintiff succeeds in establishing a prima facie case, the "burden of persuasion then shifts to the employer to demonstrate the applicability of one of the four affirmative defenses specified in the Act." Id. Because the employer bears the burden of proof at trial as to the affirmative defenses, "in order to prevail at the summary judgment stage, the employer must prove at least one affirmative defense 'so clearly that no rational jury could find to the contrary.'" Id. (quoting E.E.O.C. v. Del. Dep't of Health & Soc. Serv., 865 F.2d 1408, 1414 (3d Cir. 1989)).

Here, Plaintiff has not met her initial burden of establishing a prima facie case of wage-based sex discrimination. Although it is true that she was paid $1,500 less than a male employee previously employed by FCCC, Plaintiff has not shown that the male employee performed "work of substantially equal skill, effort and responsibility, under similar working conditions." See id. As Defendants rightly note, Plaintiff has no personal knowledge of Mr. Hemashettar's work, as she began working in Dr. Fan's lab well after he had departed from FCCC. Her allegation that the two of them performed similar functions is therefore meaningless absent some independent support for that assertion. Plaintiff has not provided any such support, as she has pointed to no evidence of the work performed by Mr. Hemashettar. As with her other claims of discrimination, Plaintiff's claim of wage discrimination is based solely on her subjective belief that her work was similar to that of her predecessor. Plaintiff therefore has failed to produce sufficient evidence to establish a prima facie case under the Equal Pay Act.[8]

---

[8] Even if Plaintiff could be said to have established a prima facie case of wage-based sex discrimination, Defendants have met their burden of demonstrating an affirmative defense – namely, that Mr. Hemashettar was compensated due to "a differential based on any other factor other than sex." See 29 U.S.C. § 206(d). Defendants have presented evidence that Mr.

**IV.   CONCLUSION**

For the foregoing reasons, the Court will strike from the record Plaintiff's answers to Defendants' first set of interrogatories, deny Defendants' motion to dismiss as a sanction, grant Defendants' motion for summary judgment in its entirety, and enter judgment in favor of Defendants and against Plaintiff. An appropriate order follows.

---

Hemashettar held a different job title than Plaintiff and performed more advanced functions in that position. For instance, the evidence indicates that he held a leadership role in the lab, whereas Plaintiff was responsible for more basic functions, such as ordering supplies and assisting with experiments. Furthermore, Defendants have shown that Plaintiff's salary was in fact greater than FCCC's male employees who occupied the same position she did. In light of that unrebutted evidence, no rational juror could disagree that the difference in pay between Plaintiff and Mr. Hemashettar was based on a factor other than sex. See Stanziale, 200 F.3d at 107.